I have a housekeeping question for you, just to help me understand. Throughout the Blue Brief, there are places where Mr. Flores highlights sections of the brief. Is there a reason for that? It didn't say whether it was confidential or what. I'm sorry, which brief, Your Honor? The Blue Brief. I mean, I can hold it up and you can see what I'm talking about, the gray highlighting. I believe, Your Honor, that was a result of an Adobe feature. I don't believe that Mr. Flores, when submitting that document, intended to submit a highlighted section. Oh, okay. I apologize. But you know what we're talking about. I mean, there are these gray lines. In the paper copy that was delivered to the court, I believe that that was unintended  Oh, okay. I don't think... So I couldn't figure out why it was? No, I apologize for that. You shouldn't do that. I mean, you should be careful that the paper copy is a key copy. Yes, Your Honor. It makes it hard to read, among other things. I understand. We will not do that again. I apologize for that confusion. Hey, on page six of the Blue Brief, Mr. Flores says that he suffered several back injuries while serving as a police officer. How was he injured, and what was the nature and extent of his injuries, and where's that in the record? Are you referring, Your Honor, to Mr. Flores' post-service police career injuries? I'm sorry? Post-service? Yeah. His police injuries. Yeah. I don't have details about Mr. Flores' injuries when he was serving as a police officer. I do know that he served 30 years as a detective, which was obviously a physically intensive career. But I'm not aware of the specific injuries that he suffered, although we are aware that Mr. Flores entered that profession with back pain already. Okay. Wait a minute. But it's in the record. I mean, the citation on the brief. We've got workers' comp. We've got a Texas workers' comp report is what I see there, but it doesn't give me a sum. It says he had been employed and was on light duty and so on. Yes, Your Honor. I don't know what specific events Mr. Flores experienced when he was serving as a police officer that caused those additional back injuries. We can ask Mr. Flores and advise the court in a supplemental way. No, the record's the record. Okay. Okay. Well, may it please the court, Your Honors. This case is about a dispute created and then adjudicated de novo solely by the Veterans Court. The question is whether the Veterans Court overstepped its scope of review and violated Chenery when it tried a dispute that wasn't before it. Mr. Flores told the board that he hurt his back two ways in service. He was kicked in the coccyx and he loaded heavy ammunition while serving as a gunnery mate. The board only considered the coccyx injury theory of entitlement for Mr. Flores' back claim. Mr. Flores argued on appeal that the board was required to consider the ammo loading theory. At the Veterans Court, the Secretary agreed. The board never considered the ammo loading theory or provided an examination for it. And the Secretary defended that he didn't have to. The Veterans Court held that the Secretary did have to consider the ammo loading theory but found that over the Secretary's objection, the Secretary had already considered the ammo loading theory. The court also held that it didn't have to provide an examination. The parties agreed on a fact going into the Veterans Court's decision, and that was that the board did not consider the ammo loading theory when considering whether Mr. Flores was entitled to serve as connection. Your problem is basically a fact finding by the Veterans Court that the board did consider the ammo loading theory and rejected it. And why does that present a legal question for us? That presents a legal question, Your Honor, because of the mandates of 7261C, which prevent the court from engaging in that fact finding in the first place. We are not asking this court, Your Honor, to inquire as to whether the court Wait a second. It prohibits the Veterans Court from making a decision as to whether the issue was addressed by the board? Yes. How can that be? Excuse me. How can that be? I mean, that would seem to be one of the things that the Veterans Court should be doing, is making a determination as to whether the board addressed a particular issue or not. The Veterans Court made a factual finding de novo when it determined that the board did something that the agency did something that the agency advised the court it did not do. And that was the inquiry that overstepped the board's scope of review under 7261, Your Honor. That was a fact that both parties agreed to, that the board did not engage in that inquiry, that the Veterans Court decided to find de novo. And that was outside of the scope of the board. I'm a little confused. The Court of Veterans Claims considered whether or not the board had adequately considered the ammo theory and concluded that it had. Why is that fact finding in the first instance? The fact finding wasn't the adequacy, Your Honor, of the board's consideration. The fact finding, Your Honor, was whether the board considered it at all. And the agency, the secretary, had already advised the court that it didn't and that it, legally speaking, from the secretary's point of view, didn't have to. And it was an issue of- You can't be binding on the Veterans Court. That happens all the time. The parties make arguments that we discard and disagree with, and we go on to consider something else. The fact that, in your view, the government conceded this doesn't mean that the Veterans Court is bound by that concession. That, Your Honor, is why Chenery is important in addition to 7261, because this was the agency not arguing that it didn't consider the ammo-loading theory. This was the agency informing the court of the justification for its decision. And then the court used a different justification than what the agency had told the court it did in order to affirm the agency's decision by different reasoning. The agency had explained in its briefing that it had not engaged in the ammo-loading theory, and its defense of that was a legally erroneous defense under Roebuck, as the Veterans Court did hold. However, the Veterans Court made a factual finding in order to justify the board's decision on a basis that the board, the agency itself, never actually provided. Your Honors, this is why under Roebuck, the Veterans Court has already held that the agency, had it not engaged in the ammo-loading theory, would have committed a legal error. The Veterans Court was only able to affirm the agency's action, the agency's decision, by overstepping its scope of review under 7261, and then violating Chenery by affirming an agency decision under grounds that the agency explicitly disavowed. Under Chenery, the Veterans Court can't chisel a precise justification out of an unclear agency decision. And the Veterans Court even identified that this was not a clear agency decision. Your Honor, this is why we ask that the court, that this court, hold that the Veterans Court overstepped its scope of review when it made a de novo finding of fact that the board did something that the agency identified to the court that it did not do in order to justify an agency decision under entirely new grounds. We ask this court to hold that the Veterans Court violated 7261 and Chenery, and remand for the board to consider the ammo-loading theory and provide an examination.  May it please the court. The Veterans Court did not make any de novo findings of fact or impermissibly substitute its own rationale. And it correctly found no error in the board's decision not to provide a medical examination. The overall requirement to satisfy a claim here, entitlement to compensation, is that Mr. Flores needed to demonstrate a present disability, incurrence or aggravation of a disease or injury, and then an excess. And the condition that he was claiming was a low back condition. And the board found in the Veterans Court in reviewing the board's decision found that it adequately explained its rationale for finding that two of those requirements were not met. One, there was no injury whatsoever in service to the lower back. And two, there was definitely no nexus because of all the other injuries that occurred in the 1990s when Mr. Flores was serving as a police officer. So is it the government's position? So therefore, parsing whether or not which of the two reasons he was, things that happened to him that he was alleging is not kind of, it's not the issue that was before the CA. Right, Your Honor. It's a more primary issue as to whether he made any showings whatsoever about his lower back. Irrespective of whether, how it happened. Correctly. Correct, Your Honor. And I think the confusion as to the two theories that he presented comes from the fact, and this is not something that is discussed as much as it should have been probably, is that in 1967, the board already considered, and this is at Appendix 189, his theory that he injured his back lifting ammo. At Appendix 189, his contention was that he hurt his back while unloading supplies and ammunition from ships while in service in 1963. In the 1967 board decision, the board found that the back injury, any back injury which he sustained during service is considered to have been acute and transitory. Spondylosis is not a residual of an injury, and the evidence does not establish the existence of spondylosis thesis, and that's the condition for which service connection was initially claimed. And the finding of fact was that the back condition now present in 1967 did not have its onset during the veteran's military service. So what's your response to your friend's arguments with regard to the agency's position and how the agency gave it up then, and therefore the court couldn't sort of... A couple things, Your Honor. One, it's as Judge Dyke stated, to the extent that the Secretary made an incorrect legal statement in its argument, we don't disagree with the veteran court's conclusion that there is only one disability claimed here and only one claim with two theories. I do bring up the 1967 decision because of the procedural history which led to the Secretary making that argument, which is the only reason that he was able to bring a claim back to the VA was because he had a new injury that he was alleging in 1999, a new injury that he was kicked in the coccyx. And so that's the only reason... And all the new medical opinions before the CAVC and the board in this case all had to do with that. Correct, Your Honor. Let me ask you... Oh, I suppose it's a housekeeping question, although the real question is, does the government actually give a damn about anything? Let me direct you to page 4 of the red brief, okay? And section 2, heading A, during his service in the Army from 1961 to 1964, and then underneath it says, Mr. Flores served in the Army from 1961 to 1964, and then it says at the bottom of the page, two years after he left the Army. Do you know what a DD-214 is? Yes, Your Honor. A DD-214 is at 110 in the appendix. Have you looked at it? No, Your Honor. To be honest, I don't know what that is, DD-214. Mr. Flores served in the United States Navy, not in the United States Army. He didn't have a drill sergeant, as is referenced in the briefing, at least some of it. He probably had a drill instructor, I think they called him in the Navy, certainly the Marines do. And this kind of sloppiness is just rife throughout it, and being an undergraduate of the Drill Instructor School at Fort Ord in 1969, I find it particularly irritating. But I find it particularly irritating as well that you don't bother to properly refer to somebody's service to the United States. Enough said. Okay, I apologize for that, Your Honor, if there was an oversight in how the drill instructor was referred to. I think... I'm talking about his service. It's disrespectful. You know, when I write briefs, when I write opinions, I always refer to someone as Mr. or Doctor or whatever their proper title is. I try to avoid pejoratives and signs. This sort of thing just rates. That's a message. Yeah, thank you. And then, I guess, Your Honor, I will just say that there really is no jurisdiction to consider the essence of what Mr. Flores has presented here because, as Judge Dyke said, the veteran court's finding that the board adequately considered this other allegation of an injury from loading ammunition was a finding of fact from the veterans court. So there's not really an issue here that this court has jurisdiction to consider.  Thank you, Your Honor. Your Honor, the Secretary has urged us to ignore what he characterized as an incorrect legal statement in his brief to the veterans court. The statement that the Secretary made in providing information as to what the board considered when it made its decision is not a valid statement. It's not a legal statement or a legal argument. That is a statement of fact as to what the agency itself did. And the agency is in not only the best, but really the only possible position to speak to what the agency did. Now, this was an incorrect factual statement. And under Chenery, if we can't believe the justifications for an agency's decision, then we can't really exercise judicial review of an agency effectively because the courts have to take into account with a measure of integrity what the Secretary means when he says what he did. Now, that would mean that the court would otherwise be unable to review any agency action, Your Honor. And that's why it's important that the Secretary advised the veterans court as to exactly what he was doing when he affirmed the board decision. And the veterans court identified that it would have been legal error had the veterans court taken that information from the agency under advisement because the board had to consider the ammo-loading theory. And that's because Mr. Flores reopened, when he reopened his claim, he also mentioned the ammunition-loading theory. And that's why both the coccyx injury and the ammunition-loading theory were issues, were theories. All the medical opinions that he put in, his private medical opinions, were not about the ammo-loading theory then? The October 2016 medical opinion, Your Honor, did not rest solely upon the coccyx injury. It did mention it, but it related, it mentioned the ammo-loading, the ammo-loading event in service as well, and it related Mr. Flores' current back condition and degenerative back condition shown in his 1966 x-ray, which, by the way, Your Honors, was not two years after Mr. Flores... Where does this medical opinion refer to the ammo-loading theory? It is at Appendix 100 to 101, Your Honors. The medical expert, the author of that opinion, the October 2016 opinion, related Mr. Flores' degenerative disease as it appeared in his 1966 x-ray to his military service, attributable to his military service. Now... Where's the reference to the ammo? The ammo-loading theory reference, Your Honor, is at Appendix 100 at the bot... Let's see, the third paragraph. The paragraph beginning with Mr. Flores entered military service in 1961. That last sentence mentions Mr. Flores' loading and unloading ammo, Your Honor. It was not only the coccyx injury that was the only potential event in service that the October 2016 opinion related to the evidence that the examiner saw in the 1966 x-ray, Your Honors. And that x-ray showed degenerative changes. Only 14 months, not two years, only 14 months after Mr. Flores left the service, which indicated to the examiner, given her expertise and 10 years of experience in the field, related to his military services, period of military service, not just specifically to the coccyx injury. Thank you. I'll rethink both sides in the case.  Thank you. Thank you, Your Honor. The next case for argument is 19-1210, Dr. Stefano v. LinkedIn.